FILED
IN OPEN COURT

SEP 2 9 2023

CLERK, U.S. DISTRICT COURT
NORFOLK, VA

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

*Norfolk Division*

UNITED STATES OF AMERICA

v.                                                                    Case No. 2:23-cr-065

MALIK DILLARD,

Defendant.

## STATEMENT OF FACTS

The United States and the defendant, MALIK DILLARD (hereinafter, "Defendant"), agree that at trial, the United States would have proven the following facts beyond a reasonable doubt with admissible and credible evidence:

1.     Beginning in or about September 2021 and continuing thereafter until on or about February 2023, within the Eastern District of Virginia and elsewhere, the defendant, MALIK DILLARD, aka "Mayo," and his co-conspirators, Sebastian Balthazar and Richard Olsak-Finn, did knowingly and intentionally combine, conspire, confederate, and agree with each other and with other persons, both known and unknown to the grand jury, to knowingly and intentionally manufacture, distribute, and possess with intent to manufacture and distribute 50 grams or more of methamphetamine, its salts, isomers, and salts of its isomers and 500 grams or more of a mixture and substance containing a detectable amount of methamphetamine, its salts, isomers, and salts of its isomers, a Schedule II controlled substance, in violation of Title 21, United States Code, sections 846, 841(a)(1) and (b)(1)(A).

2.     From at least September 2021 through February 2023, defendant would procure methamphetamine from out-of-state sources and have it shipped in wholesale quantities into the Eastern District of Virginia for further distribution.  Defendant would use residences in Virginia

1





Beach, Portsmouth, Suffolk, and Norfolk, Virginia, to receive, store, and process methamphetamine and other controlled substances.   Defendant provided methamphetamine to at least five or more other individuals, who then—under defendant's organization and leadership—further distributed the methamphetamine to narcotics customers.

<u>Receipt of a Shipment of Methamphetamine in April 2021</u>

3.      On or about March 30, 2021, law enforcement learned that a United States Postal Service parcel weighing approximately five pounds was going to be delivered to an apartment within a larger apartment complex located on Edward Street in Norfolk, Virginia (the "Edward Street Address").   The parcel had purportedly been sent from "Tianna Brown" in Long Beach, California.   At approximately 10:40 AM on March 31, 2021, law enforcement observed the package being delivered at the Edward Street Address by a United States Postal Service courier. At approximately the same time, call detail records reflect that defendant made a phone call to a number associated with an individual who was then residing at the Edward Street Address. Shortly after the call concluded, law enforcement observed defendant arrive and walk up the exterior steps to the Edward Street Address.

4.      The next month, law enforcement learned that a second package was being sent by the United States Postal Service to the same Edward Street Address, this time purportedly from a "Kianna Brown" in Long Beach, California.   On or about April 22, 2021, pursuant to a lawfully obtained search warrant, law enforcement opened and searched the parcel, which contained approximately 1,778 grams of methamphetamine.

5.      The 1,778 grams of methamphetamine were tested by the Department of Homeland Security's Laboratories and Scientific Services Directorate, which confirmed that the white

 

crystalline substance was in fact methamphetamine hydrochloride, a Schedule II controlled substance, and had an average purity of 98.6 +/- 2.1%.

Distribution of Methamphetamine on December 16, 2022

6.      On or about December 16, 2022, a confidential informant ("CI") made a telephone call to defendant and arranged for the purchase of approximately one pound and eleven ounces of methamphetamine for $4,500.

7.      A few hours later, defendant called the CI to inform him/her that co-defendant Balthazar had called the CI "like three times" and that co-defendant Balthazar "was outside." Co-defendant Balthazar had, in fact, called the CI several times from a telephone number unknown to the CI.

8.      The CI and co-defendant Balthazar subsequently had several telephone conversations, using the same telephone number, in which the CI provided instructions so that co-defendant Balthazar could open the gate to the area where the CI resided.

9.      After crossing beyond the gate and entering the fenced-in enclosure, co-defendant Balthazar was lawfully stopped by law enforcement. Co-defendant Balthazar was sitting in the front passenger seat of a black Mercedes Benz vehicle operated by another individual. A narcotics detection canine alerted to the odor of narcotics emanating from the vehicle and law enforcement subsequently recovered approximately two pounds—specifically 756 grams—of a white crystalline substance believed to be methamphetamine from a backpack inside the vehicle.

10.     Co-defendant Balthazar, after being advised of his rights, initially denied knowledge of the methamphetamine but, later admitted that "Mayo" provided him with the methamphetamine in Virginia Beach, Virginia. "Mayo" is a name often associated with the defendant.

11.     The 756 grams of methamphetamine were tested by the Department of Homeland Security's Laboratories and Scientific Services Directorate, which confirmed that the white crystalline substance was in fact methamphetamine hydrochloride, a Schedule II controlled substance, and had an average purity of 81.9 +/- 2.8%.

12.     The Defendant provided the 756 grams of methamphetamine to co-defendant Balthazar and instructed co-defendant Balthazar to deliver the package to the CI.

13.     Defendant's participation in the events described was undertaken knowingly, intentionally, and unlawfully, and not as a result of an accident, mistake, or other innocent reason.

14.     Defendant acknowledges that the foregoing statement of facts does not describe all of the defendant's conduct relating to the offense charged in this case nor does it identify all of the persons with whom the defendant may have engaged in illegal activities.

Respectfully submitted,

Jessica D. Aber
United States Attorney

Date: 9/29/23                    By: _____

John F. Butler
Anthony Mozzi
Assistant United States Attorneys

4

After consulting with my attorney and pursuant to the plea agreement entered into this day between the defendant, MALIK DILLARD, and the United States, I hereby stipulate that the above Statement of Facts is true and accurate, and that had the matter proceeded to trial, the United States would have proved the same beyond a reasonable doubt.

_____
MALIK DILLARD
Defendant

I am MALIK DILLARD's attorney. I have carefully reviewed the above Statement of Facts with him. To my knowledge, his decision to stipulate to these facts is an informed and voluntary one.

_____
James O. Broccoletti, Esq.
Attorney for MALIK DILLARD

5