IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

*Norfolk Division*

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>MALIK DILLARD,<br><br>a/k/a "Mayo"<br><br>Defendant. | Criminal No. 2:23-CR-65-001 |

**POSITION OF THE UNITED STATES WITH RESPECT TO SENTENCING**

The United States of America, through its attorneys, Jessica D. Aber, United States Attorney, John F. Butler and Anthony C. Mozzi, Assistant United States Attorneys, hereby submits its position with respect to the defendant's sentencing factors. In the Presentence Investigation Report (PSR) prepared in this matter, the United States Probation Office determined the applicable guidelines to be 360 months to Life, based on a Total Offense Level of 37 and a Criminal History Category of VI. In accordance with Section 6A1.2 of the Sentencing Guidelines Manual and this Court's policy regarding sentencing, the United States represents that it has reviewed the PSR and consulted with the Probation Office and defense counsel. There are no objections from either party.

For the reasons outlined below, the United States respectfully submits that a sentence of 360 months would be sufficient but not greater than necessary to accomplish the goals of 18 U.S.C. § 3553(a).

**I.     PROCEDURAL BACKGROUND**

The defendant, together with two co-conspirators were named in an eight-count Indictment returned by a grand jury sitting in Norfolk on May 17, 2023. PSR ¶ 1.

The defendant was charged with three counts: Count One charged him with a two- and half-year conspiracy to manufacture, distribute, and possess with intent to manufacture and distribute methamphetamine, in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(A). Count Four charged the defendant with distribution of methamphetamine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B) and 18 U.S.C. § 2. Count Seven charged him with distribution of methamphetamine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A) and 18 U.S.C. § 2.

The defendant agreed to plead guilty to Counts One and Seven on September 29, 2023, and in return, the government agreed to dismiss Count Four and not to file an Information (pursuant to 21 U.S.C. § 851) based on the defendant's prior felony drug offense. PSR ¶¶ 2, 4.

## II.  MOTION FOR ACCEPTANCE OF RESPONSIBILITY

The United States moves this Court under U.S.S.G. § 3E1.1(b) to grant an additional one-level reduction in the defendant's offense level for acceptance of responsibility. The defendant assisted authorities in the investigation and prosecution of this case by timely notifying the government of his intention to plead guilty, thereby allowing it to avoid preparing for trial and permitting the United States and the Court to allocate their resources efficiently.

## III.  ARGUMENT

In *United States v. Booker*, the Supreme Court made clear that sentencing courts should "consult [the Sentencing] Guidelines and take them into account when sentencing." 543 U.S. 220, 264 (2005). The Supreme Court provided this direction to promote the sentencing goals of Congress, namely to "provide certainty and fairness in meeting the purposes of sentencing, [while] avoiding unwarranted sentencing disparities." *Id*. (quoting 28 U.S.C. § 991(b)(1)(B)). In its more recent decision in *Molina-Martinez v. United States*, the Court emphasized the role the guidelines play in achieving "[u]niformity and proportionality in sentencing" and noted that "the Guidelines

are not only the starting point for most federal sentencing proceedings but also the lodestar." 136 S. Ct. 1338, 1347 (2017).

The Fourth Circuit has provided the following guidance in the wake of *Booker*: "A district court shall first calculate (after making the appropriate findings of fact) the range prescribed by the guidelines. Then, the court shall consider that range as well as other relevant factors set forth in the guidelines and" the 18 U.S.C. § 3553(a) factors "before imposing the sentence." *United States v. Hughes*, 401 F.3d 540, 546 (4th Cir. 2005). So sentencing courts must consider the factors outlined in 18 U.S.C. § 3553(a), including the need for the sentence "to reflect the seriousness of the offense, to promote respect for law, and to provide just punishment for the offense; [and] to afford adequate deterrence to criminal conduct." 18 U.S.C. § 3553(a)(2)(A),(B).

A. **Nature and Circumstances of the Offense**

The defendant was a leader in a large methamphetamine conspiracy that spanned multiple years, multiple states, and involved a number of drug dealers beyond those with whom he was indicted. What makes this defendant's drug conspiracy so aggravating is that he managed it on the foundation of an egregious criminal history: one that involved multiple federal convictions, drug dealing, a string of bank robberies, and lewd offenses that require him to be a registered sex offender. *See infra* 6-8 (summary chart of criminal convictions).

The defendant, who is in his forties, is a career criminal and knew exactly what he was doing and the harm he was causing. But none of that mattered to him. He has been diagnosed with Antisocial Behavior and the impact his criminality had on the community had little effect on him. PSR ¶ 69. Even getting shot a second time in January 2023 during a robbery did not stop him from dealing drugs. PSR ¶ 66. He continued his role in the conspiracy until he was finally arrested the following month. PSR ¶ 53.

One of the few redeeming things about this defendant was his decision to take responsibility and do so quickly (entered federal custody on July 17, 2023 and pleaded guilty two months later on September 29, 2023). PSR page 2 and ¶ 2. That decision saved the government considerable resources, especially considering the depth and complexity of the investigation, and his leading role in the conspiracy.

The defendant was at the apex of a large drug conspiracy and coordinated with out-of-state suppliers to import nearly pure kilogram quantities of methamphetamine into the Hampton Roads region, which he then re-supplied to his network of distributors. PSR ¶ 8. While he was assessed a four-point enhancement for his leadership role as an organizer, he was fortunate not to have received a two-point enhancement for maintaining a drug premises even though he used stash houses across the region in Virginia Beach, Portsmouth, Suffolk, and Norfolk. PSR ¶¶ 8, 10, and 22. That enhancement would have resulted in a guideline range of Life. He was also not assessed a drug quantity for the five-pound parcel that was delivered on March 31, 2021. In fact, the only quantity of methamphetamine with which he was assessed were two seizures from law enforcement resulting in a base offense level of 36. PSR ¶ 8.

The defendant's drug dealing had a soul crushing impact on the faceless, nameless victims caught in the grip of addiction and their families who desperately try to help. Methamphetamine overdose deaths are on the rise, and this drug poses a growing threat to the public. According to the Virginia Department of Health's Chief Medical Examiner, the number of fatal overdose methamphetamine deaths in Virginia has skyrocketed, from a total of six in 2007 to 576 in 2022[1]— a 9,500% increase.

---

[1] https://www.vdh.virginia.gov/content/uploads/sites/18/2023/10/Quarterly-Drug-Death-Report-FINAL-Q2-2023.pdf (last visited January 19, 2024).

Compounding the problem, there are no approved medications effective at treating methamphetamine addiction—there is no methadone equivalent for methamphetamine. As is true for heroin, fentanyl, and a host of other controlled substances, methamphetamine truly is a scourge on society, wreaking havoc in its users' lives, breaking families apart, and taking a severe toll on the public health social safety net. It eats at the heart and soul of the community—a fact that was never considered by the defendant. Instead, he was driven by greed and an indifference to the law and to those who suffered from his poison.

B.  **History and Characteristics of the Defendant**

The defendant has dedicated his life to the criminal underworld. He has permanently imprinted into his skin the kinds of things he valued and to which he dedicated his life: dollar signs, "M.O.B." (often an acronym for "Member of Bloods" or "Money Over B*tches"), and "PIRU" (Pimps in Red Uniform). PSR ¶ 62. Even with a gang-related arrest in 2018, he maintains that he is a Bloods "gang dropout". *Id.*

The defendant was raised in New York by his mother and father until he was 18. PSR ¶ 57. During his teenage years, he was first arrested at age 14, later spent time in juvenile custody, had his first child at age 16, and dropped out of high school after the tenth grade. PSR ¶¶ 57, 76.

He then relocated to Atlanta with his father for a "fresh start" but noted that his criminal behavior "matured". PSR ¶ 57.

He has never been married but has three children with three women. PSR ¶ 59. His children range in age from 25, 22, and 5. PSR ¶¶ 59, 60.

The defendant is not a user of methamphetamine but was a regular user of marijuana and is interested in substance abuse treatment. PSR ¶¶ 72-73. He considers himself "mentally sound", but his criminal history and prior mental health evaluations do not support that. PSR ¶¶ 67, 69, 70.

5

After his federal conviction in Richmond, a Mental Health Evaluation was administered and the defendant was diagnosed with Antisocial Behavior, a personality disorder, and Exhibitionist Disorder. PSR ¶ 69. A sex offender risk assessment in 2017 resulted in a Static-99 score, which placed him in the High-Risk category for committing another sexual offense. PSR ¶ 70. He noted that at the time he exposed himself to children "he did not care who saw him." *Id*. The government recommends a new assessment and mental health treatment.

In 2017, the defendant advised that "he had never pursued obtaining a GED", so the government recommends education and vocational training while incarcerated in the BOP. His employment record is largely vacant or unverified and it reflects both a life of incarceration and criminality. PSR ¶¶ 80-85.

He has no recorded assets and still owes $355,183 in restitution from his two prior federal convictions; therefore he has no ability to pay a fine. PSR ¶ 86.

*Criminal History*

The defendant's criminal history is so egregious and undervalued that a chart is warranted. Even though nine (9) of his adult convictions did not receive any criminal history points, he is still in the highest criminal history category recognized by the guidelines. These nine convictions could easily serve as a basis for the government to request a sentence of 35 to 40 years, but we refrain from doing so given the speed with which the defendant accepted responsibility.

| Date/Age | Charge | Sentence | Background | Points |
|---|---|---|---|---|
| 14 (¶ 29) | Attempted Drug Distr. | 18 months | | **0** |
| 2000/17 (¶ 33) | Shoplifting | Probation | Retail merchandise from Macy's (+$300) | **0** |
| 2000/18 (¶ 34) | Public Indecency | 4 days | "Exposed his sexual organ" | **0** |

| | | | | |
|---|---|---|---|---|
| 2000/18 (¶ 35) | Attempt to Elude, No License | 10 days | Failed to stop for pursuing officers and failed to appear in court. | **0** |
| 2000/18 (¶ 36) | Eluding, etc. | 10 days | Gave officers a false name. Was driving a stolen vehicle and failed to stop for pursuing officers. Failed to appear in court. | **0** |
| 2001/18 (¶ 37) | Obstruction of Officers | 12 months reduced to time served | | **0** |
| 2001/18 (¶ 38) | Criminal Trespass; Shoplifting | 12 months reduced to time served | Entered food mart after receiving notice that entry was forbidden and stole two 12-packs of beer. | **0** |
| 2002/20 (¶ 39) | Public Indecency | 2 days | Female victim arrived at her residence. "Defendant pulled down his pants and began masturbating on front of the victim." He used an alias when arrested. | **0** |
| 2003/20 (¶ 40) | Theft of Stolen Property; Concealed Weapon; Pistol without a license | 12 months reduced to time served | Police received a report for a shooting suspect. They encountered the defendant, who used an alias, and admitted to being in an argument that led to gunfire. He possessed a stolen firearm. | **0** |
| 2003/21 (¶ 41) | Conspiracy to Commit Bank Fraud | 33 months + SRV violation in 2007 with 14 more months | U.S. District Court, Northern District of Georgia: The defendant was part of a counterfeit check conspiracy that created a loss of $245,830. He was considered **a manager/supervisor** in this case because he recruited women to cash the fake checks. His supervision was revoked following his time in the BOP because of two state convictions for felony public indecency. | 3 |
| 2006/24 (¶ 42) | Felony Public Indecency (x2) | 5 years (commuted to time served after 1 year) | Initially charged with two counts of Child Molestation. Was in the stairwell of an apartment complex masturbating in front of two children under the age of 16. | **0** |
| 2008/25 (¶ 43) | Bank Robbery Conspiracy | 115 months* (*was 288 months; see footnote 3 on page 8*); 2018 SRV with 14 | U.S. District Court, Eastern District of Virginia, Richmond Division: Defendant was assessed an **aggravating role as an organizer/leader** of a conspiracy involving <u>16 bank robberies</u>, resulting in a loss of $178,425 (not to mention the impact on dozens of victims). Following his time in BOP, he was arrested for gang participation, failing to | 3 |

7

| | | more months | register as a sex offender, failed to participate in sex offender treatment as instructed, and absconded from supervision. Judge Hudson sentenced him to 14 more months. | |
|---|---|---|---|---|
| 2019/36 (¶ 44) | Marijuana Distribution; Possession of a Firearm by Felon | 5 years incarcerated; 3 suspended | Gang participation charge was *nolle prossed* in Nov. 2019. Defendant led police on a chase. When he was arrested, they recovered two boxes of marijuana, cash, a drug ledger, and a firearm. | 3 |
| 2023/40 (¶ 45) | Indecent Exposure (***fifth time***) | 10 days incarceration | The offense occurred while the defendant was in state custody. | 1 |

Because the defendant was on supervision at the time of the instant offense, he received an additional point. PSR ¶ 47. His bank robbery and drug distribution convictions qualified him as a career offender pursuant to U.S.S.G. § 4B1.1(b). PSR ¶ 49.

The defendant's criminal history spans 11 pages of his PSR and includes so much aggravating criminal conduct that it screams high-risk recidivist[2]. His crimes escalated over time (or using the defendant's own word: "matured") and include violence, drugs, and human indecency. It is crystal clear that he has demonstrated a life devoid of respect for the law and of other people. Exposing himself to women and children, possessing firearms as a felon, getting engaged in bank fraud, committing 16 bank robberies[3] across seven states, and dealing poison to this community even after a felony conviction for drug dealing demands a sentence of at least 30 years.

---

[2] The defendant was released from BOP in May 2019, which was his fourth time in federal custody (two federal convictions and subsequent supervised release violations on each conviction). Not too long after his May 2019 release, he engaged in this methamphetamine conspiracy.

[3] See *United States v. Malik Rahmel Dillard*, 3:08-cr-332-001. An upward departure was requested by former EDVA Criminal Chief, AUSA Mike Gill. Judge Henry Hudson sentenced Dillard to 288 months. *See* Judgment, ECF No. 47.

### C. Other Pertinent § 3553(a) Factors and Avoiding Unwarranted Sentencing Disparities

In addition to the facts of the case and the defendant's personal history and characteristics as related in the PSR, the government also notes the need to protect the public from this defendant, to recognize the victims of his crimes, promote respect for the law, and afford adequate deterrence.

While affording adequate general deterrence may not be a primary driver in this Court's assessment of an appropriate sentence, specific deterrence for this particular defendant should be considered. If a 288-month sentence by a federal judge in 2009 did not deter the defendant from committing additional crime upon his release (subsequent SRV violation and convictions in 2019 and 2023), neither will a sentence equal to or less than that now.

The government is also cognizant of the need to avoid unwarranted sentencing disparities under 18 U.S.C. § 3553(a)(6). As the leader of this drug conspiracy, and considering his history and characteristics, and the sentences of other similarly situated defendants in this District, 30 years is sufficient, but not greater than necessary to achieve the goals set forth in § 3553:

| Defendant & Case No. | Guidelines | Sentence | Additional |
|---|---|---|---|
| **Day, Kevin 2:20cr11** | **37/IV** | **288 months** | **Pleaded guilty to distributing kilogram quantities of methamphetamine. Leadership role.** |
| Howell, Xavier 2:20cr11 | 43/III | 360 months | Bench trial for methamphetamine conspiracy. Leadership Role. |
| Twitty, Deric 2:16cr79 | 38/IV | 324 months | Pleaded guilty to distributing kilogram quantities of methamphetamine. |
| Carrington, Daniel 2:20cr106 | 43/IV | 540 months | Jury trial for fentanyl distribution resulting in death. |
| Dawson, Erskine 2:17cr61-2 | 46/III | 432 months | Pleaded guilty to heroin/fentanyl conspiracy resulting in death. |
| Clark, Rashad 2:17cr61-7 | 52/VI | 444 months | Pleaded guilty to heroin/fentanyl conspiracy resulting in death. |

| Stuart, Kenneth 2:17cr61-1 | 51/VI | Life | Pleaded guilty days before trial. Leader of heroin/fentanyl drug conspiracy resulting in death. Laughed about victims' deaths. |
| Perdue, Leroy 2:17cr116-1 | 44/VI | Life | Jury trial for leading large-scale heroin conspiracy. Career Offender. |
| Outten, Alonzo 2:15cr80-1 | 41/VI | 360 months | Pleaded guilty to leadership role in heroin conspiracy. Career Offender. |
| Brown, Carlos 2:16-cr-67 | 40/VI | 360 months | Pleaded guilty to distribution of heroin resulting in death. |
| Best, Michelle 2:18cr147-1 | 41/II | 360 months | Pleaded guilty to leadership role in heroin conspiracy resulting in death. |
| Hatt, Gregory 2:15cr153 | 48/V | 360 months | Pleaded guilty to distribution of heroin resulting in death. |

The government highlights the August 4, 2023, sentence of Kevin Day as a comparator to this case. Day, like the defendant, led a methamphetamine conspiracy and quickly pleaded guilty. Day (at least eight years younger than the defendant), received a sentence of 288 months incarceration, but his criminal history was two categories lower than the defendant's. There is an enormous and glaring difference between Day's two (2) convictions and the defendant's fourteen (14) convictions (including two prior federal convictions). These comparators establish that a 360-month sentence would not be a disparity and would be sufficient but not greater than necessary.

IV.   **Conclusion**

While the defendant is known by many aliases, including multiple social security numbers, dates of birth, and a Virginia Sex Offender Registry, one thing is certain—he has devoted himself to a lifetime of crime and remains a threat to the community. While it should be commended that he took responsibility, his egregious criminal history, the seriousness of this case and his leadership role in it, cannot be overlooked. To protect the community from this defendant, to promote respect for the law, to consider the victims of his offense, to afford adequate specific deterrence, and to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct, the defendant should be sentenced to no less than 360 months.

10

        Respectfully submitted,

        Jessica D. Aber
        United States Attorney

By:    /s/
        John F. Butler
        Anthony C. Mozzi
        Assistant United States Attorneys
        United States Attorney's Office
        101 West Main Street, Suite 8000
        Norfolk, Virginia 23510
        Office Number: 757-441-6331
        Facsimile Number: 757-441-6689
        Email Address: john.f.butler@usdoj.gov
              anthony.mozzi@usdoj.gov

CERTIFICATE OF SERVICE

     I HEREBY CERTIFY that on this 19th day of January, 2024, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification to all counsel of record.

     I HEREBY CERTIFY that on this 19th day of January, 2024, I sent by electronic mail a true and correct copy of the foregoing to the following:

          Kalyn M. Monreal
          United States Probation Officer
          600 Granby Street, Suite 200
          Norfolk, VA 23510

          _____/s/_____

          John F. Butler
          Assistant United States Attorney
          United States Attorney's Office
          101 West Main Street, Suite 8000
          Norfolk, Virginia 23510
          Office Number: 757-441-6331
          Facsimile Number: 757-441-6689
          Email Address: john.f.butler@usdoj.gov